UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDEL FIGUEROA,<br><br>    Plaintiff<br><br>    v.<br><br>NEW YORK LIFE INSURANCE COMPANY, NEW YORK LIFE GROUP BENEFIT SOLUTIONS, LIFE INSURANCE COMPANY OF NORTH AMERICA, AND BRADFORD & BIGELOW, INC. GROUP POLICY,<br><br>    Defendants | CIVIL ACTION NO. |

**COMPLAINT**

INTRODUCTION

1. Plaintiff, Fidel Figueroa ("Mr. Figueroa") brings this action against the Defendants, New York Life Insurance Company and New York Life Group Benefit Solutions (collectively referred to as ("New York Life"), Life Insurance Company of North America ("LINA"), and the Bradford & Bigelow, Inc. Group Policy ("Plan") (collectively referred to as "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq*. ("ERISA"). Mr. Figueroa is a participant in two ERISA welfare benefit plans insured by LINA and New York Life and administered by New York Life,: the Bradford & Bigelow, Inc. Group Long Term Disability Plan ("LTD Plan") and the Bradford & Bigelow, Inc. Group Life Insurance Plan ("Life Plan").

1

2. Mr. Figueroa is filing this action to recover long-term disability ("LTD") benefits due to him under the LTD Plan, reinstate his insurance coverage under the Life Plan by recovering the waiver of premium ("LWOP") benefits wrongly denied him, to enforce the present rights existing under the LTD Plan and Life Plan, and to clarify rights under the terms of the LTD Plan and Life Plan. Mr. Figueroa also seeks to recover attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g) and 12% prejudgment interest pursuant to Massachusetts law.

3. Mr. Figueroa challenges the Defendants': 1) unreasonable and unlawful termination of Mr. Figueroa's LTD and LWOP benefits despite the substantial medical and vocational evidence demonstrating Mr. Figueroa's qualification for said benefits; 2) repeated pattern of rejecting and/or ignoring the substantial evidence supporting Mr. Figueroa's disability in an effort to limit Defendants' financial exposure for Mr. Figueroa's claims; 3) failure to provide Mr. Figueroa with a full and fair review of his claims, including repeatedly ignoring information supporting Mr. Figueroa's entitlement to benefits, as well as terminating his benefits on the basis of demonstrably false information and despite the lack of improvement in his condition; and 4) failure to provide a reasonable claims procedure that would yield an impartial decision on the merits of Mr. Figueroa's LTD and LWOP claims.

**JURISDICATION AND VENUE**

4. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of group long-term

disability and life insurance benefits under plans underwritten by LINA and New York Life for the benefit of employees of Bradford & Bigelow, Inc.

5. Additionally, this action may be brought before this Court pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

6. ERISA provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

7. Venue is proper in this district as Mr. Figueroa participated in the employee benefit plan at issue within this district, many of the events and occurrences relevant to this matter occurred within this district, and the Defendants conduct business in this district. 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

## PARTIES

8. Mr. Figueroa was a resident of Massachusetts when he became disabled and began receiving benefits from Defendants under the Plans. Mr. Figueroa is a vested participant in Defendants' employee benefit plans, within the meaning of 29 U.S.C. § 1002(2)(7). Mr. Figueroa has standing to bring this action under 29 U.S.C. § 1132(a).

9. The defendant, New York Life Insurance Company, is a for-profit insurance company, with its principal place of business in New York, New York. New York Life Insurance Company transacts business in Massachusetts and administers both Plans under which Mr. Figueroa is suing. New York Life is the party responsible for processing claims made under the LTD Plan and Life Plan and making a final determination as to Mr. Figueroa's eligibility for benefits.

10. The defendant, New York Life Group Benefit Solutions, is a for-profit insurance company,

with its principal place of business in New York, New York. NYLGBS transacts business in Massachusetts and administers both Plans under which Mr. Figueroa is suing. New York Life Group Benefit Solutions is the party responsible for processing claims made under the LTD Plan and Life Plan and making a final determination as to Mr. Figueroa's eligibility for benefits.

11. The defendant, LINA, is a for-profit insurance company, with its principal place of business in Philadelphia, Pennsylvania. LINA transacts business in Massachusetts, has offices in Massachusetts, and administers both Plans under which Mr. Figueroa is suing. LINA is the party responsible for processing claims made under the LTD Plan and Life Plan and making a final determination as to Mr. Figueroa's eligibility for benefits.

12. At all times relevant to the claims asserted in this Complaint, Defendants New York Life, New York Life Group Benefit Solutions, and LINA, purported to act as ERISA fiduciaries with respect to participants of the LTD Plan and Life Plan generally, and specifically with respect to Mr. Figueroa, within the meaning of ERISA.

13. The LTD Plan and Life Plan under which Mr. Figueroa is suing are both "employee welfare benefits plans" as defined by ERISA, 29 U.S.C. §1002(1).

## STATEMENT OF FACTS

**Relevant Plan Terms.**

14. As an employee of Bradford & Bigelow, Inc., Mr. Figueroa was eligible for LTD and life insurance coverage under contracts of insurance with New York Life.

15. Both contracts of insurance were issued to Bradford & Bigelow, Inc. by LINA.

16. New York Life acquired LINA from Cigna Corporation effective December 31, 2020.

17. The LTD Plan provision defining disability states:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is;
> 1) unable to perform the material duties of his or her Regular Occupation; and
> 2) unable to earn 80% or more of his or her Indexed Earnings from working his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1) unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified for based on education, framing, or experience, and
> 2) unable to earn 80% or more of his or her Indexed Earnings.

18. Mr. Figueroa is eligible for waiver of premiums due under his Life Plan if he meets the following definition of disability:

> Disability/Disabled means because of Injury or Sickness an Employee is unable to perform the material duties of his or her Regular Occupation, or is receiving disability benefits under the Employer's plan, during the initial 9 months of Disability. Thereafter, the Employee must be unable to perform the material duties of any occupation which he or she may reasonably become qualified based on education, framing or experience, or is subject to the terms of a Rehabilitation Plan approved by the Insurance Company.

19. As a result of the functional limitations imposed by his illness, Mr. Figueroa has met his burden of proving he is unable to perform the material duties of any occupation, as defined under the LTD Plan and Life Plan, on a part- or full-time basis.

20. Mr. Figueroa has met his burden of proving that he meets the LTD Plan definition of disability and is therefore eligible for LTD benefits under the terms of the LTD Plan.

21. Mr. Figueroa has met his burden of proving that he meets the Life Plan definition of disability and is therefore eligible for LWOP benefits under the terms of the Life Plan.

22. Neither the LTD Plan, Life Plan, LINA, nor New York Life has any administrative processes and safeguards (as those terms are used in 29 C.F.R. §2560.503-1) in place to ensure and to verify appropriately consistent decision making.

23. The LTD Plan and Life Plan do not confer discretion on New York Life or LINA to

determine eligibility for benefits or to interpret the terms of the Plans.

24. The judicial standard of review of this matter is de novo.

**Mr. Figueroa's Claim for LTD and LWOP Benefits.**

25. Ms. Figueroa's last day of work at Bradford & Bigelow was May 23, 2015.

26. Mr. Figueroa ceased working because his medical condition resulted in symptoms that functionally limited his ability to perform on a full – or part-time basis, the duties of his own or any reasonable occupation.

27. Mr. Figueroa subsequently applied for and was granted LTD and LWOP benefits from LINA.

28. LINA paid Mr. Figueroa LTD benefits through August 20, 2017, determining that he met the Plan definition of Disability.

29. On April 28, 2017, LINA terminated Mr. Figueroa's benefits as of August 21, 2017, even though his condition had not improved.

30. On April 28, 2017, LINA terminated Mr. Figueroa's LWOP benefits.

31. LINA's assertion that Mr. Figueroa was no longer disabled was unreasonable and unsupported by the substantial evidence in LINA's possession.

32. On or about October 30, 2017, Mr. Figueroa appealed LINA's April 28, 2017 decision to terminate his benefits.

33. On May 8, 2018, LINA upheld its termination of Mr. Figueroa's benefits based solely on paper reviews completed by Dr. Rajesh Ethiraj and by Dr. Azra Salahuddin.

34. On or about November 8, 2018, Mr. Figueroa, through counsel, filed a second-level appeal of LINA's decision to terminate his LTD and LWOP benefits.

35. As part of his appeal, Mr. Figueroa submitted medical records and reports from his treating physicians documenting his ongoing functional limitations due to his illnesses.

36. On November 28, 2018, LINA declined to accept Mr. Figueroa's second appeal request "as some of the medical records received have already been reviewed" and "the remainder of the medical records received are not concurrent to the paid through date of August 20, 2017."

37. On February 8, 2022, through counsel, Mr. Figueroa submitted a request to New York Life for his LTD and LWOP claims to be reopened.

38. As part of his request, Mr. Figueroa submitted medical records and reports from his treating physicians documenting his ongoing functional limitations due to his illnesses, as well as independent functional capacity testing and an independent vocational report.

39. On March 22, 2022, New York Life declined to reconsider its termination of Mr. Figueroa's benefits under the Plans.

40. New York Life did not perform a complete vocational assessment prior to terminating Mr. Figueroa's benefits or during its review of his appeal.

41. New York Life never requested that Mr. Figueroa undergo an in-person evaluation by an independent physician even though the LTD Plan and Life Plan provide Mr. Figueroa with this right, and despite the fact that Mr. Figueroa's medical condition is best evaluated in person, rather than through a review of medical records.

**Summary of Defendants' Review of Mr. Figueroa's Claims.**

42. Mr. Figueroa has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

43. Mr. Figueroa's disability and eligibility for LTD and LWOP benefits is based on the substantial evidence in Defendants' possession.

44. Mr. Figueroa's condition had not changed, nor had it improved, at the time Defendants terminated his claims for benefits.

45. Since the date of onset of his disability, Mr. Figueroa has been and remains unable to perform the material and substantial duties of his own and any reasonable occupation due to his impairments. Since his impairments are chronic and have not improved in any material respect despite extensive treatment, there does not appear to be any reasonable likelihood of medical improvement at any time prior to the expiration date of the scheduled benefit payments. As a result, Mr. Figueroa is entitled to the reinstatement his benefits with payment of all benefits in arrears with 12% interest, along with continuation of payments so long as he meets the LTD Plan and Life Plan definition of "disabled."

46. The Defendants and their medical reviewers arbitrarily dismissed Mr. Figueroa's symptoms and functional limitations when they determined that Mr. Figueroa was not disabled.

47. The Defendants failed to have Mr. Figueroa's claims assessed by a medical provider with the appropriate credentials to evaluate his eligibility for benefits as required by ERISA's implementing regulations.

48. The Defendants failed to address or evaluate the clinical findings of Mr. Figueroa's treating and evaluating physicians regarding Mr. Figueroa's symptoms, restrictions, functional limitations, and disability.

49. The Defendants repeatedly and unreasonably dismissed Mr. Figueroa's symptoms of pain.

50. The Defendants failed to conduct a reasonable vocational review of Mr. Figueroa's ability to perform the duties of his own or any reasonable occupation, as required by the terms of the LTD Plan and Life Plan.

51. Not one of the innumerable providers to examine and to treat Mr. Figueroa concluded he was exaggerating his symptoms, or that his symptoms were incongruent with the objective testing or their findings on clinical examinations. Instead, they noted Mr. Figueroa was vigilant in his attempts to improve his condition, attempting differing medications, therapies, and treatments. As the Seventh Circuit noted in *Carradine v. Barnhart,* 360 F.3d 751 (7th Cir. 2004):

    What is significant is the improbability that [the claimant] would have undergone the pain-treatment procedures that she did, which included ... heavy doses of strong drugs ..., merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits; likewise the improbability that she is a good enough actress to fool a host of doctors and emergency-room personnel into thinking she suffers extreme pain; and the (perhaps lesser) improbability that this host of medical workers would prescribe drugs and other treatment for her if they thought she were faking her symptoms. Such an inference would amount to an accusation that the medical workers who treated [the claimant] were behaving unprofessionally. *Id.* at 755 (internal citation omitted).

52. The only evaluators to question Mr. Figueroa's veracity were Defendants' file reviewing doctors, none of whom examined or spoke to Mr. Figueroa or his treatment providers. While Defendants are permitted to defer to the opinions of their reviewing physicians, Defendants' unquestioned reliance upon their opinions despite their lack of experience with his illness, their reliance on proven false information, and their failure to consider all the evidence in the record, was unreasonable, particularly in light of the medical evaluations supporting Mr. Figueroa's disability. Moreover, when the reviewing doctors' opinions are factored in with Defendants' failure to address the vocational assessments of Mr. Figueroa's claim, and its unsupported dismissal of the opinions of Mr. Figueroa's treating

providers, the only conclusion to be drawn is that Defendants' decision was arbitrary and capricious and wrong.

53. By refusing to engage with information Defendants acknowledged was thorough and required to complete its review, *i.e.*, evidence Mr. Figueroa's symptoms impacted his functionality, Defendants proved that their financial conflict of interest impacted their decision to terminate Mr. Figueroa's benefits and was unreasonable. *See Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Cos.*, 935 F.Supp. 2d 278, 293 (D.Mass. 2013) (an "administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports his conclusion.").

54. The Defendants failed to meet the minimum requirements for the termination of Mr. Figueroa's LTD and LWOP benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

55. Defendants failed to meet the notice requirements required by ERISA's implementing regulations. In particular, Defendants' adverse determination letters failed to articulate the basis for the decision to deny benefits, failed to contain a full discussion of why Mr. Figueroa's claim was denied, and failed to detail the standard behind the decision.

56. The Defendants failed to meet the Plans' requirements for review of claims that have been terminated.

57. The Defendants failed to provide Mr. Figueroa with a full and fair review of his claims for LTD and LWOP benefits.

58. The Defendants failed to respond to Mr. Figueroa's attempts to engage in a meaningful dialogue regarding the evaluation of his claim for LTD and LWOP benefits.

59. The Defendants routinely ignored communications from Mr. Figueroa regarding his claim for LTD and LWOP benefits.

60. The Defendants relied on information they were aware was false in terminating Mr. Figueroa's benefits.

61. The Defendants failed to engage with the objective evidence supporting Mr. Figueroa's disability.

62. The Defendants' refusal to consider Mr. Figueroa's second-level appeal violated the terms of the Plans, Defendants' internal guidelines, and ERISA's requirement to provide Mr. Figueroa with a full and fair review of his claims.

63. Any discretion to which Defendants may claim they entitled under the terms of the Plans is negated by its failure to provide Mr. Figueroa with an explanation as to its adverse action as proscribed by ERISA and its implementing regulations.

64. Any discretion to which Defendants may claim they entitled under the terms of the Plans is negated by its failure to provide Mr. Figueroa with a full and fair review of his claims.

65. The decision to terminate Mr. Figueroa's LTD and LWOP benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the LTD Plan and Life Plan, and contrary to law.

66. The Defendants were influenced by their financial conflict of interest when they terminated Mr. Figueroa's LTD and LWOP benefits and failed to provide him with the full and fair review of his claims required by law.

67. Due to the unlawful termination of benefits under ERISA, Mr. Figueroa has lost his rightful LTD and LWOP benefits. He has also suffered emotional and financial distress as a result of the Defendants' actions.

68. As a result of the denial of his claim for LTD and LWOP benefits, Mr. Figueroa has lost the use of his LTD and LWOP benefits.

69. Mr. Figueroa is entitled to restitution for the loss of his benefits at the Massachusetts statutory 12% interest rate.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for LTD Benefits)**
**(ALL DEFENDANTS)**

70. Mr. Figueroa realleges each of the paragraphs above as if fully set forth herein.

71. The LTD Plan is a contract.

72. Mr. Figueroa has performed all his obligations under the contract.

73. 29 U.S.C. § 1132(a) states that:

    (B) A civil action may be brought ---

    1. by a participant or beneficiary –

        A. for the relief provided for in subsection © of this section, or

        B. to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

74. The Defendants' actions constitute an unlawful denial of disability benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

75. The Defendants unlawfully denied Mr. Figueroa's LTD benefits in part by: (1) dismissing without explanation, the substantial evidence supporting Mr. Figueroa's claim for LTD benefits; and (2) denying Mr. Figueroa a full and fair review of their decision to deny his claim for benefits.

76. In accordance with 29 U.S.C. §1132, Mr. Figueroa is entitled to LTD benefits under the terms of the LTD Plan until he is no longer disabled or reaches the maximum benefit duration, as promised under the LTD Plan.

77. The Defendants have refused to provide Mr. Figueroa with his disability benefits and are, therefore, in breach of the terms of the LTD Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the LTD Plan in the best interests of the participants of the Plan.

78. As a direct and proximate result of this breach, Mr. Figueroa has lost the principal and the use of his rightful disability benefits.

**SECOND CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Life Waiver of Premium Benefits)**
**(ALL DEFENDANTS)**

79. Mr. Figueroa realleges each of the paragraphs above as if fully set forth herein.

80. The Life Plan is a contract.

81. Mr. Figueroa has performed all his obligations under the contract.

82. 29 U.S.C. § 1132(a) states that:

   (C) A civil action may be brought ---

   2.  by a participant or beneficiary –

    A. for the relief provided for in subsection © of this section, or

    B. to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

83. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

84. The Defendants unlawfully denied Mr. Figueroa's LWOP benefits in part by: (1) dismissing without explanation, the substantial evidence supporting Mr. Figueroa's claim for LWOP benefits; and (2) denying Mr. Figueroa a full and fair review of their decision to deny his claim for benefits.

85. In accordance with 29 U.S.C. §1132, Mr. Figueroa is entitled to LWOP benefits under the terms of the Life Plan until he is no longer disabled or reaches the maximum benefit duration, as promised under the Life Plan.

86. The Defendants have refused to provide Mr. Figueroa with his LWOP benefits and are, therefore, in breach of the terms of the Life Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the Life Plan in the best interests of the participants of the Plan.

87. As a direct and proximate result of this breach, Mr. Figueroa has lost this life insurance coverage.

**THIRD CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

88. Mr. Figueroa realleges each of the paragraphs above as if fully set forth herein.

89. Under the standards applicable to ERISA, Mr. Figueroa deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

90. Defendants have the ability to satisfy the award.

91. Mr. Figueroa's conduct of this action is in the interests of all participants who subscribe to the LTD and Life Plan, and the relief granted hereunder will benefit all such participants.

92. Mr. Figueroa's conduct of this action is in the interests of individuals participating in ERISA plans where the plan administrators have violated ERISA's implementing regulations for their own financial benefit.

93. Mr. Figueroa's conduct of this action is in the interests of all individuals who lack the financial ability to pursue their claims for benefits.

94. The Defendants have acted in bad faith in denying Mr. Figueroa's disability and LWOP benefits under the LTD Plan and Life Plan.

95. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge, and decree that Mr. Figueroa is entitled to LTD benefits as calculated under the terms of the LTD Plan;

(2) Declare, adjudge and decree that Mr. Figueroa is entitled to ongoing waiver of premium benefits under the Life Plan, and a restoration of his life insurance coverage;

(3)   Award Mr. Figueroa disability benefits and 12% interest from the dates of the Defendants' breach of contract;

(4)   Declare, adjudge, and decree Mr. Figueroa was entitled to LTD and LWOP benefits to which he is entitled as a disabled individual under the terms of the LTD Plan and Life Plan;

(5)   Order that the Defendants make restitution to Mr. Figueroa in the amount of all losses sustained by Mr. Figueroa as a result of the wrongful conduct alleged herein, together with 12% prejudgment interest;

(6)   Award Mr. Figueroa the costs of this action and reasonable attorneys' fees; and

(7)   Award such other relief as the court deems just and reasonable.

Date:   April 12, 2023                    Respectfully submitted for the Plaintiff,


                                          By:   /s/ Socorra A. DeCelle
                                                Socorra A. DeCelle
                                                BBO No. 688197
                                                Mala M. Rafik
                                                BBO No. 638075
                                                ROSENFELD & RAFIK P.C.
                                                184 High Street, Ste 503 Boston, MA 02110
                                                T: 617-723-7470, ext. 156
                                                F: 617-227-2843
                                                E: sad@rosenfeld.com